

ISAF

**FILED**

MAY 1 6 2024

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

$350.00

1  Gregg Roberts
2  43430 E Florida Ave #F-293, Hemet CA 92544
   Ph: 951-330-4450
3  gregg@legalsupport-sc.com
4  Assignee of Claims, and Creditor, Pro Se

5

6

7

8           **UNITED STATES BANKRUPTCY COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10          **FRESNO DIVISION**

11

| | |
|---|---|
| **In re Christina Marie Ruelas,** | Case No.: 2019-bk-13631 |
| Debtor | Chapter 7 |
| Gregg Roberts, | Adv. Proc. No. 24-01012 |
| Plaintiff, | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT** |
| v. | 1. **Debt for Willful and Malicious Injury (11 USC 523(a)(6)** |
| Christina Marie Ruelas, | 2. **Debt for Fraud (11 USC 523(a)(2)(a))** |
| Defendant | |

21

22      To the Debtor Christina Marie Ruelas ("Ruelas") and the Judge of this Honorable

23 Court, Creditor Gregg Roberts ("Roberts") alleges as follows:

24

25

26

27

28          *COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

                            *1*

## JURISDICTION

1. This complaint seeking a determination of a debt is an adversary proceeding within the meaning of Part VII of the Federal Rules of Bankruptcy Procedure. This action is a proceeding arising in or related to a case under Chapter 7 of the Bankruptcy Code. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

2. The deadline set for objecting to discharge was 11/22/2019. However, neither Roberts nor his predecessor-in-interest, Lisa Barlow, formerly known as Lisa Donahue ("Barlow"), received any official notice or actual knowledge of the bankruptcy filing in this case nor the associated discharge until March 21, 2024. On that date, Ms. Barlow received an email from a judgment collection company informing her about this bankruptcy case. A true and correct copy of that email is being filed contemporaneously with this Complaint as *Exhibit 1.* The address in the Petition and creditors matrix was an old address for Barlow, and by the time of the petition filing and mailings of notifications, any Postal Service forwarding order had expired.

3. In response to acquiring actual knowledge of the bankruptcy filing and discharge, Barlow diligently kept making efforts to find a judgment collector who might be

willing to bring such an action as this. On April 19, Roberts received an email from a fellow collector informing him about Barlow's case. After gathering information and researching various issues, Roberts invited Barlow to assign her claims to him, and on April 27, she did so. A true and correct copy of the assignment is being filed contemporaneously with this Complaint as *Exhibit 2*.

4. The debt to Ms. Barlow arose from (1) fraudulent, willful, and malicious conduct by Ruelas, and (2) a Stipulated Settlement and Disciplinary Order, followed by a default in payments by Ruelas and a resulting Default Decision and Order expressing an enforcement award relating to that conduct issued by the California Contractors State License Board ("CSLB"). A true and correct copy of those two orders is being filed contemporaneously with this Complaint, starting with the Accusation that began the disciplinary case, as *Exhibit 3*.

5. In addition to the award to Ms. Barlow, there was an award to the CSLB for its investigative and enforcement costs. *Id.*, p. 24, lines 1-5 and p. 9, para 8. Roberts contacted the CSLB to ask if it would like to assign to Roberts the debt for so that he could argue for the nondischargeability of that debt as well. On May 7, the CSLB declined Roberts' offer, assuring him that the CSLB has the matter well in hand. *Exhibit 4*.

6. Creditors normally have approximately 90 days from the time of service of a petition with its associated service of process, to file such an action. Barlow and Roberts have acted together to get this Complaint written and filed in far less than 90 days after Barlow acquired actual knowledge of the bankruptcy petition and discharge.

7. Roberts spent several days, to no avail, trying to determine what filing deadline, if any, applies here. 11 USC 523(a)(3) refers to a condition not present here, where the debt is "neither listed nor scheduled." The debt *was* listed and scheduled, but the address for the creditor was outdated. Therefore, FRBP 4007(b) applies:

> **Time for Commencing Proceeding Other Than Under §523(c) of the Code.** A complaint other than under §523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule.

8. "See *In re Global Precious Metals, Inc.*, 143 B.R. 204 (Bankr. N.D. Ill. 1992). Held, lack of notice does not authorize court to extend bar date; however, Code protects creditors, namely, § 523(a)(3) (lack of creditor notice renders nondischargeable claim against individual debtor).... Due process should protect creditor where these provisions fail to do so. See *Broomall Indus. v. Data Design Logic Sys.*, 786 F.2d 401 (Fed. Cir. 1986); *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir. 1984); *United States v. Cole (In re Cole)*, 146 B.R. 837 (D. Colo. 1992)." US Dept of Justice, *Civil Resource Manual*, "64. Creditor's Claims in Bankruptcy

Proceedings -- The Debtor-Creditor Relationship In Bankruptcy -- Allowance and Payment of Claims," https://www.justice.gov/jm/civil-resource-manual-64-creditors-claims-bankruptcy-proceedings.

9.  In case the Court finds that FRBP 4007(b) for some reason does not apply, Roberts submits the following additional argument as to why this action is timely filed. As the Assignee, Roberts is bound by the same deadline (if any) that Ms. Barlow would have been bound by, had she been the one to file this action. This Complaint is being placed for delivery to the Court such that it should get docketed less than 60 days after Ms. Barlow received actual notice of the filing of Ruelas' Original Petition. This is considerably less than the amount of time Barlow or Roberts would have had, had either of them had actual knowledge of the filing of the Original Petition a few days after the mailing. It seems unfair to penalize creditors who received late notice as opposed to creditors who received timely notice, by giving non-noticed creditors *less* time to respond than noticed creditors.

10. Accordingly, Roberts alleges that this action is timely filed, and prays that the Court agrees.

**PARTIES**

11. Gregg Roberts is the assignee of the claims assigned to him by Lisa Barlow, formerly known as Lisa Arlene Donahue, and he is therefore the Plaintiff. His mailing address is 43430 E Florida Ave #F-293, Hemet CA 92544.

12. The Defendant is Debtor Christina Marie Ruelas, also known as Christina Marie Ruelas Gonzalez, SSN xxx-xx-1784 (again, "Ruelas"). Her last known address is as given in the Original Petition that she filed in this case, 12677 East Cumorah Drive, Clovis, CA 93619.

**GENERAL ALLEGATIONS**

13. Roberts' claims against Ruelas arise because of both fraud and willful and malicious injury.

14. These claims arise under two interdependent sets of facts. First, Ruelas defrauded Barlow and caused willful and malicious injury to Barlow, through the acts and omissions described in *Exhibit 3*, introduced above and incorporated herein by reference.

15. As to the initial fraud, Ruelas falsely represented to Barlow that Ruelas, through her companies – which on information and belief were merely fictitious business names

for herself and not separate legal entities – was licensed and fully qualified to perform the contracting work that she contracted with Barlow to do.

16. In fact, Ruelas was licensed only to do tile and mosaic work under a C-54 license.

17. Ruelas contracted with Barlow to do work for which she was not licensed, including electrical, carpentry/painting, and plumbing work.

18. Further, Ruelas "failed to exercise direct supervision and control of the construction operations." Exercising such direct supervision and control was a condition of being licensed. Departing from that condition was the breaking of an implicit promise represented by the license.

19. Barlow reasonably relied on Ruelas' representations and her silence about the departures from her obligations and restrictions under her license described above. If Barlow had known the truth about the situation, she would not have hired Ruelas.

20. Ruelas deliberately misrepresented her qualifications to do the work on Barlow's house in order to induce Barlow into entering into the contract to do the work.

21. Barlow was damaged by that reliance.

22. When Ruelas willfully undertook work for which she was not licensed, obtained no building permit is required for the work, failed to properly supervise the work, failed

to perform the work properly herself, failed to remediate the incorrect work, and failed to issue an appropriate refund to Barlow, injury to Barlow was subjectively certain to occur.

23. Injury to Barlow was even more certain to occur when all the other violations listed in the Accusation are considered. See *Exhibit 3*, pp. 4-10.

24. Because of the subjective certainty of injury, all the above acts and omissions by Ruelas described above were not only willful but also malicious, and were done without just cause or excuse.

25. The second interdependent set of facts are described in the next few paragraphs.

26. Ruelas signed the Stipulated Settlement and Disciplinary Order, agreeing to pay Barlow (then Donahue) $382.87 per month for 29 months until the full amount of $11,486.00 had been paid to Barlow, to compensate Barlow for Ruelas' misconduct as the owner of two licensed contractor businesses. *Ex. 3*, p. 22.

27. Ruelas never made any payments pertaining to that stipulated settlement.

28. Ruelas never intended to make any payments pertaining to that stipulated settlement.

29. Barlow reasonably relied on Ruelas' representation in signing the stipulated settlement, taking no other action to collect the debt, and trusting that the CSLB would enforce the settlement.

30. Ruelas made the false representations in signing the Stipulated Settlement and Disciplinary Order, in part to induce Barlow not to take any other action to collect the debt caused by Ruelas's acts and omissions.

31. Barlow was damaged by that reliance.

32. Without just cause or excuse, Ruelas willfully failed and refused to make even one single payment to Barlow pertaining to the stipulated settlement.

33. Without just cause or excuse, Ruelas willfully failed and refused to make even one single payment to Barlow pertaining to the increased amount awarded in the Default Decision and Order.

34. Ruelas knew that Barlow would be injured by Ruelas' failure to make any payments to Barlow.

35. Accordingly, Ruelas' failure to pay was malicious as well as willful.

36. In response to Ruelas' default in regard to the Stipulated Settlement, the CSLB increased the amount that she was obligated to pay to Barlow, to $14,395.56.

Exhibit 3, p. 28. This might have been an error, in that that amount exactly matched

the increased amount of costs for investigation and enforcement that the CSLB

determined, in the Default Decision and Order, that it had incurred. *Id.*, p. . However,

it is too late for Ruelas to make any argument about such an error.

37. Moreover:

> "26. On or about February 4, 2015, an industry expert retained by the Board
> inspected the L.D. [Lisa Donahue] project. On or about March 6, 2015, the
> industry expert found that work performed by Respondent on the L.D.
> project did not meet accepted trade standards for good and workmanlike
> construction. The industry expert estimated that it would cost
> approximately $20,800 to correct and complete the work."

> *Id.*, p. 11.

38. Accordingly, Barlow was damaged in an amount *greater than even the higher*

*restitution amount*: the estimated cost to correct and complete the work, or $20,800.

39. The injury in this case is malicious because it "involves '(1) a wrongful act, (2) done

intentionally, (3) which necessarily causes injury, and (4) is done without just cause

or excuse.'" *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146-47 (9th Cir. 2002)

(internal citations omitted). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th

Cir.), cert. denied, 533 U.S. 930 (2001) states the third criterion a bit more clearly:

"injury was substantially certain to occur" to the creditor as a result of the debtor's

misconduct.

*COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

40. Barlow will be submitting a sworn Declaration in Support of this Complaint under separate cover within a few days of the filing of this Complaint. That Declaration will be served on Ruelas, along with the Complaint and the Summons to be issued by the Clerk of the Court. Roberts asks that that Declaration be considered to be incorporated into this Complaint despite the fact that the Declaration will not have been filed contemporaneously with it.

### FIRST CAUSE OF ACTION: Fraud (11 USC 523(a)(2)(a))

41. All the preceding allegations are incorporated herein by reference.

42. Ruelas made affirmative, knowingly false representations, as well as knowing misrepresentations by omission, which were intended to induce Barlow to enter into a contract and pay Ruelas.

43. Barlow was injured by her reasonable reliance on those representations, and misrepresentations.

### SECOND CAUSE OF ACTION: Willful and Malicious Injury (11 USC 523(a)(6))

44. All the preceding allegations are incorporated herein by reference.

45. Ruelas willfully committed wrongful acts and omissions, leading to the debt in question.

46. Ruelas' acts and omissions necessarily caused injury; injury was substantially certain to occur as a result of it.

47. Ruelas' acts and omissions were done without just cause or excuse.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gregg Roberts prays for relief against Defendant Christina Marie Ruelas, AKA Christina Marie Ruelas Gonzalez, on the First and Second Causes of Action as follows:

A. That this Court enter judgment declaring that the above-described debt of the Defendant is excepted from the discharge previously granted in the main bankruptcy case, and is nondischargeable;

B. That Plaintiff be awarded actual damages in the amount of $20,800, punitive damages that the Court finds just and proper, and prejudgment interest according to law;

C. That Plaintiff be awarded his costs of suit and any reasonable attorney fees that are eventually incurred; and

D. For such other and further relief as the Court deems just and proper.

*COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

1 | Signed this 14th day of May, 2024, at Hemet, California.

2

3 | Respectfully Submitted,

4 | *Gregg Roberts*

5 | Gregg Roberts

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 | *COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT*

*13*

Fwd: Judgment Collection                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

**Subject:** Fwd: Judgment Collection
**From:** Lisa Barlow <lisas0928@gmail.com>
**Date:** 4/23/2024, 10:09 AM
**To:** Gregg Roberts <gregg@legalsupport-sc.com>

---------- Forwarded message ---------
From: **Amanda JudgmentCollectors** <amanda@judgmentcollectors.com>
Date: Thu, Mar 21, 2024, 1:02 PM
Subject: Re: Judgment Collection
To: Lisa Barlow <lisas0928@gmail.com>

Hi Lisa,

Thanks for your patience while I researched this. Unfortunately, we won't be able to help you collect on this case. The defendant filed for bankruptcy in 2019, which means any debt incurred before that filing is dismissed. I'd encourage you to seek legal advice on what your possible next steps would be for this judgment.

Thanks,



**Amanda Niutupuivaha**
Operations Manager
111 East Broadway
Suite 390
Salt Lake City, UT 84111
801-637-6711
amanda@judgmentcollectors.com

**From:** Lisa Barlow <lisas0928@gmail.com>
**Sent:** Thursday, March 21, 2024 12:39 PM
**To:** Amanda JudgmentCollectors <amanda@judgmentcollectors.com>
**Subject:** Re: Judgment Collection

## Ex. 1, Page 1 of 2

Fwd: Judgment Collection                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

On Thu, Mar 21, 2024 at 11:13 AM Lisa Barlow <lisas0928@gmail.com> wrote:
christina ruelas address is 6650 N Maroa ave unit 121 fresno ca 93704 is her condo

On Thu, Mar 21, 2024 at 10:43 AM Lisa Barlow <lisas0928@gmail.com> wrote:
She works at Delerio construction LLC as the tile and fabrication project manager Fresno Ca
thank You
Lisa

On Thu, Mar 21, 2024 at 10:27 AM Lisa Barlow <lisas0928@gmail.com> wrote:


On Tue, Mar 19, 2024 at 2:53 PM Lisa Barlow <lisas0928@gmail.com> wrote:
thank you ill send it tomorrow

On Tue, Mar 19, 2024, 10:12 AM Amanda JudgmentCollectors
<amanda@judgmentcollectors.com> wrote:
Hi there,

Thank you for reaching out regarding our collection services. When you get the chance, please
attach a copy of your judgment and I'll look into it. Feel free to reach out with any questions.

Thanks,

**Amanda Niutupuivaha**
Operations Manager
111 East Broadway
Suite 390
Salt Lake City, UT 84111
801-637-6711
amanda@judgmentcollectors.com

─Attachments:───────────────────────────────────────

Outlook-gqxrorlm.png                                          0 bytes

Outlook-gqxrorlm.png                                          0 bytes

**Ex. 1, Page 2 of 2**

**Assignment of Claims**

## ASSIGNMENT OF AWARD AND ALL RELATED CLAIMS

Lisa Barlow, whose mailing address is 3421 E Agate Rd, Shelton WA 98584, formerly known as Lisa Donahue and formerly at 956 Hanover Ave, Lemoore, CA 93245, is the Assignor of the Award and claims described below.

Gregg Roberts, a natural person whose mailing address is 43430 E. Florida Ave., #F-293, Hemet CA 92544, is the Assignee of these claims.

Assignor hereby assigns and transfers to Assignee and his successors, assigns and personal representatives, the Restitution Award granted to Assignor as part of the Stipulated Settlement and Disciplinary Order in Case No. N2014-449 Before the Registrar of Contractors, Contractors' State License Board, Department Of Consumer Affairs, State of California (attached hereto), along with any and all claims, demands, and causes of action of any kind consisting of the Award or relating to its enforcement, that the Assignor has or might have against any and all legal entities including but not limited to Christina Marie Ruelas Gonzalez, also known as Christina Marie Ruelas; Granite Depot; and RGS Tile.

Assignee may in his own name and for his own benefit prosecute, collect, settle, compromise and grant releases on any and all such claims as he in his sole discretion deems advisable.

Signed: _____

Printed Name: Lisa Barlow

Executed this 27 day of April 2024, at Shelton WA.

**Ex. 2, Page 1 of 2**

# WASHINGTON NOTARY ACKNOWLEDGMENT

State of Washington

County of Mason

I certify that I know or have satisfactory evidence that _Lisa Arlene Barlow_ (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument and acknowledged it to be (his/her) free and voluntary act for the uses and purposes mentioned in the instrument.

Dated: 4/27/24

(Seal or Stamp)

NOTARY PUBLIC
Commission Number
23037836
Sadie Jo Holter
My Appointment Expires
11/24/2027
STATE OF WASHINGTON

_Signature_

Signature

_Notary Public_

Title

My Appointment Expires: 11/24/2027

Page 1 of 1

**Ex. 2, Page 2 of 2**

1  KAMALA D. HARRIS
   Attorney General of California
2  KENT D. HARRIS
   Supervising Deputy Attorney General
3  LESLIE A. BURGERMYER
   Deputy Attorney General
4  State Bar No. 117576
    1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA  94244-2550
6    Telephone:  (916) 324-5337
     Facsimile:  (916) 327-8643
7  Attorneys for Complainant

8                                        BEFORE THE
                             REGISTRAR OF CONTRACTORS
9                         CONTRACTORS' STATE LICENSE BOARD
                            DEPARTMENT OF CONSUMER AFFAIRS
10                               STATE OF CALIFORNIA

11  In the Matter of the Accusation Against:

12  GRANITE DEPOT                              Case No. N2014-449
    P.O. Box 1411
13  Fresno, California 93716
    CHRISTINA MARIE RUELAS                     A C C U S A T I O N
14  GONZALEZ, OWNER

15  Contractor's License No. 976364

16  RGS TILE
    P.O. Box 1411
17  Fresno, California 93716
    CHRISTINA MARIE RUELAS
18  GONZALEZ, OWNER

19  Contractor's License No. 877849

20              Respondent and Affiliated Parties.

21        Wood Robinson ("Complainant") alleges:

22                                        PARTIES

23        1.      Complainant brings this Accusation solely in his official capacity as the Enforcement

24  Supervisor I of the Contractors' State License Board ("Board"), Department of Consumer Affairs.

25        Contractor's License – Granite Depot

26        2.      On or about September 6, 2012, the Registrar of Contractors ("Registrar") issued

27  Contractor's License Number 976364, classification C-54 (ceramic & mosaic), to Christina Marie

28  Ruelas Gonzalez ("Respondent"), as owner of Granite Depot. On or about July 11, 2014, the

                                                1

                                                                            ACCUSATION

1  contractor's license was suspended pursuant to Business and Professions Code ("Code") section

2  7125.2 (failure to maintain workers' compensation insurance). On or about July 12, 2014, the

3  contractor's license was suspended pursuant to Code of Civil Procedure section 996.340 (no

4  contractor's bond). On or about September 30, 2014, the license expired under suspension, and

5  has not been renewed.

6          **Contractor's License – RGS Tile**

7          3.    On or about May 16, 2006, the Registrar issued Contractor's License Number 877849,

8  classification C-54 (ceramic & mosaic), to Affiliated Party, as owner of RGS Tile. The license

9  will expire on May 31, 2016, unless renewed. The license was previously suspended, as follows.

| Suspension Date | Violation | Status |
|---|---|---|
| 09/02/2012 | Code of Civil Procedure section 996.340 (no contractor's bond) | Reinstated 09/07/12 |
| 07/23/2013 | Code section 7125.2 (failure to maintain workers' compensation insurance) | 12/18/2013, suspension lifted and reinstated 01/23/2014. |
| 01/16/2015 | Code of Civil Procedure section 996.340 (no contractor's bond) | Reinstated 04/07/15 |
| 10/09/2013 | Code of Civil Procedure section 996.340 (no contractor's bond) | 12/18/2013, suspension lifted and reinstated 01/23/2014. |

18                                    **JURISDICTION**

19         4.    Business and Professions Code ("Code") section 7090 provides, in pertinent part, that

20  the Registrar may suspend or revoke any license or registration if the licensee or registrant is

21  guilty of or commits any one or more of the acts or omissions constituting cause for disciplinary

22  action.

23         5.    Code section 7095 provides that the Registrar in making his order may:

24              (a) Provide for the immediate complete suspension by the licensee of all
    operations as a contractor during the period fixed by the decision.

25

26              (b) Permit the licensee to complete any or all contracts shown by competent
    evidence taken at the hearing to be then uncompleted.

27  ///

28  ///

2

1　　　　(c)  Impose upon the licensee compliance with such specific conditions as may
　　　be just in connection with his operations as a contractor disclosed at the hearing and
2　　　may further provide that until such conditions are complied with no application for
　　　restoration of the suspended or revoked license shall be accepted by the registrar.
3

4　　6.　　Code section 7096 states:

5　　　　For the purposes of this chapter, the term "licensee" shall include an individual,
　　　partnership, corporation, limited liability company, joint venture, or any combination
6　　　or organization licensed under this chapter, and shall also include any named
　　　responsible managing officer, responsible managing manager, responsible managing
7　　　member, or personnel of that licentiate whose appearance has qualified the licentiate
　　　under the provisions of Section 7068.
8

9　　7.　　Code section 7097 states:

10　　　　Notwithstanding the provisions of Sections 7121 and 7122, when any license
　　　has been suspended by a decision of the registrar pursuant to an accusation or
11　　　pursuant to subdivision (b) of Section 7071.17, Section 7085.6 or 7090.1, any
　　　additional license issued under this chapter [the Contractors' State License Law] in
12　　　the name of the licensee or for which the licensee furnished qualifying experience and
　　　appearance under the provisions of Section 7068, may be suspended by the registrar
13　　　without further notice.

14　　8.　　Code section 7098 states:

15　　　　Notwithstanding the provisions of Sections 7121 and 7122, when any license
　　　has been revoked under the provisions of this chapter [the Contractors' State License
16　　　Law], any additional license issued under this chapter in the name of the licensee or
　　　for which the licensee furnished qualifying experience and appearance under the
17　　　provisions of Section 7068, may be revoked by the registrar without further notice.

18　　9.　　Code section 7106.5 states:

19　　　　The expiration, cancellation, forfeiture, or suspension of a license by operation
　　　of law or by order or decision of the registrar or a court of law, or the voluntary
20　　　surrender of a license by a licensee shall not deprive the registrar of jurisdiction to
　　　proceed with any investigation of or action or disciplinary proceeding against the
21　　　license, or to render a decision suspending or revoking the license.

22　　10.　　Code section 7076.5 provides, in pertinent part, that the inactive status of a license

23　　shall not bar any disciplinary action for violating provisions of the Contractors' State License Law

24　　(Code sections 7000-7191).

25　　11.　　Code section 7121 provides:

26　　　　A person who has been denied a license for a reason other than failure to
　　　document sufficient satisfactory experience for a supplemental classification for an
27　　　existing license, or who has had his or her license revoked, or whose license is under
　　　suspension, or who has failed to renew his or her license while it was under
28　　　suspension, or who has been a partner, officer, director, manager, or associate of any

<div align="center">3</div>

ACCUSATION

<div align="center">**Ex. 3, Page 3 of 28**</div>

partnership, corporation, limited liability company, firm, or association whose application for a license has been denied for a reason other than failure to document sufficient satisfactory experience for a supplemental classification for an existing license, or whose license has been revoked, or whose license is under suspension, or who has failed to renew a license while it was under suspension, and while acting as a partner, officer, director, manager, or associate had knowledge of or participated in any of the prohibited acts for which the license was denied, suspended, or revoked, shall be prohibited from serving as an officer, director, associate, partner, manager, qualifying individual, or member of the personnel of record of a licensee, and the employment, election, or association of this type of person by a licensee in any capacity other than as a nonsupervising bona fide employee shall constitute grounds for disciplinary action.

12.    Code section 7122.5 provides:

The performance by an individual, partnership, corporation, limited liability company, firm, or association of an act or omission constituting a cause for disciplinary action, likewise constitutes a cause for disciplinary action against a licensee who at the time that the act or omission occurred was the qualifying individual of that individual, partnership, corporation, limited liability company, firm, or association, whether or not he or she had knowledge of or participated in the prohibited act or omission.

## STATUTORY PROVISIONS

13.    Code section 7068.1 states, in pertinent part:

(a) The person qualifying on behalf of an individual or firm under paragraph (1), (2), (3) or (4) of subdivision (b) of Section 7068 shall be responsible for exercising that direct supervision and control of his or her employer's or principal's construction operations to secure compliance with this chapter and the rules and regulations of the board. . . .

14.    Code section 7109 states, in pertinent part:

(b) A willful departure from or disregard of plans or specifications in any material respect, which is prejudicial to another, without the consent of the owner or his or her duly authorized representative and without the consent of the person entitled to have the particular construction project or operation completed in accordance with such plans or specifications, constitutes a cause for disciplinary action.

15.    Code section 7110 provides, in pertinent part, that willful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof constitutes a cause for disciplinary action.

16.    Code section 7113 states, "Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or operation or in any modification of such contract constitutes a cause for disciplinary action."

4

**Ex. 3, Page 4 of 28**

17.　　Code section 7115 states:

> Failure in any material respect to comply with the provisions of this chapter, or any rule or regulation adopted pursuant to this chapter, or to comply with the provisions of Section 7106 of the Public Contract Code, constitutes a cause for disciplinary action.

18.　　Code section 7117.6 states, "Acting in the capacity of a contractor in a classification other than that currently held by the licensee constitutes a cause for disciplinary action."

19.　　Code Section 7159 states, in pertinent part:

> (a)(1)　This section identifies the projects for which a home improvement contract is required, outlines the contract requirements, and lists the items that shall be included in the contract, or may be provided as an attachment. . . .

> (5)　Failure by the licensee, his or her agent or salesperson, or by a person subject to be licensed under this chapter, to provide the specified information, notices, and disclosures in the contract, or to otherwise fail to comply with any provision of this section, is cause for discipline.

> (b)　For purposes of this section, "home improvement contract" means an agreement, whether oral or written, or contained in one or more documents, between a contractor and an owner or between a contractor and a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, if the work is to be performed in, to, or upon the residence or dwelling unit of the tenant, for the performance of a home improvement, as defined in Section 7151, and includes all labor, services, and materials to be furnished and performed thereunder, if the aggregate contract price specified in one or more improvement contracts, including all labor, services, and materials to be furnished by the contractor, exceeds five hundred dollars ($500). "Home improvement contract" also means an agreement, whether oral or written, or contained in one or more documents, between a salesperson, whether or not he or she is a home improvement salesperson, and an owner or a tenant, regardless of the number of residence or dwelling units contained in the building in which the tenant resides, which provides for the sale, installation, or furnishing of home improvement goods or services.

> (c)　In addition to the specific requirements listed under this section, every home improvement contract and any person subject to licensure under this chapter or his or her agent or salesperson shall comply with all of the following: . . .

> (3)(A)　Before any work is started, the contractor shall give the buyer a copy of the contract signed and dated by both the contractor and the buyer. The buyer's receipt of the copy of the contract initiates the buyer's rights to cancel the contract pursuant to Sections 1689.5 to 1689.14, inclusive, of the Civil Code.

> (B)　The contract shall contain on the first page, in a typeface no smaller than that generally used in the body of the document, both of the following: . . .

> (ii)　The name and address of the contractor to which the applicable "Notice of Cancellation" is to be mailed, immediately preceded by a statement advising the buyer that the "Notice of Cancellation" may be sent to the contractor at the address noted on the contract.

5

(4) The contract shall include a statement that, upon satisfactory payment being made for any portion of the work performed, the contractor, prior to any further payment being made, shall furnish to the person contracting for the home improvement or swimming pool work a full and unconditional release from any potential lien claimant claim or mechanics lien authorized pursuant to Sections 8400 and 8404 of the Civil Code for that portion of the work for which payment has been made.

(5) The heading: "Contract Price," followed by the amount of the contract in dollars and cents.

(6) The contract shall contain, in close proximity to the signatures of the owner and contractor, a notice stating that the owner or tenant has the right to require the contractor to have a performance and payment bond.

(7) The heading: "Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed," followed by a description of the project and a description of the significant materials to be used and equipment to be installed. For swimming pools, the project description required under this paragraph also shall include a plan and scale drawing showing the shape, size, dimensions, and the construction and equipment specifications.

(8) If a downpayment will be charged, the details of the downpayment shall be expressed in substantially the following form, and shall include the text of the notice as specified in subparagraph (C):

(A) The heading: "Downpayment".

(B) A space where the actual downpayment appears.

(C) The following statement in at least 12-point boldface type:

"THE DOWNPAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS".

(d) A home improvement contract and any changes to the contract shall be in writing and signed by the parties to the contract prior to the commencement of work covered by the contract or an applicable change order and, except as provided in paragraph (8) of subdivision (a) of Section 7159.5, shall include or comply with all of the following: . . .

(3) The following heading on the contract form that identifies the type of contract in at least 10-point boldface type: "Home Improvement." . . .

(8) If a downpayment will be charged, the details of the downpayment shall be expressed in substantially the following form, and shall include the text of the notice as specified in subparagraph (C):

(A) The heading: "Downpayment".

(B) A space where the actual downpayment appears.

(C) The following statement in at least 12-point boldface type: "THE DOWNPAYMENT MAY NOT EXCEED $1,000 OR 10 PERCENT OF THE CONTRACT PRICE, WHICHEVER IS LESS".

6

ACCUSATION

**Ex. 3, Page 6 of 28**

(9) If payments, other than the downpayment, are to be made before the project is completed, the details of these payments, known as progress payments, shall be expressed in substantially the following form, and shall include the text of the statement as specified in subparagraph (C):

(A) A schedule of progress payments shall be preceded by the heading: "Schedule of Progress Payments".

(B) Each progress payment shall be stated in dollars and cents and specifically reference the amount of work or services to be performed and materials and equipment to be supplied.

(C) The section of the contract reserved for the progress payments shall include the following statement in at least 12-point boldface type: "The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment. IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT."

(10) The contract shall address the commencement of work to be performed in substantially the following form:

(A) A statement that describes what constitutes substantial commencement of work under the contract.

(B) The heading: "Approximate Start Date".

(C) The approximate date on which work will be commenced.

(11) The estimated completion date of the work shall be referenced in the contract in substantially the following form:

(A) The heading: "Approximate Completion Date."

(B) The approximate date of completion. . . .

(13) The heading: "Note About Extra Work and Change Orders," followed by the following statement: "Extra Work and Change Orders become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments."

(e) Except as provided in paragraph (8) of subdivision (a) of Section 7159.5, all of the following notices shall be provided to the owner as part of the contract form as specified or, if otherwise authorized under this subdivision, may be provided as an attachment to the contract:

(1) A notice concerning commercial general liability insurance. This notice may be provided as an attachment to the contract if the contract includes the following statement: "A notice concerning commercial general liability insurance is

7

attached to this contract." The notice shall include the heading "Commercial General Liability Insurance (CGL)," followed by whichever of the following statements is both relevant and correct:

     (A) "(The name on the license or 'This contractor') does not carry commercial general liability insurance."

     (B) "(The name on the license or 'This contractor') carries commercial general liability insurance written by (the insurance company). You may call (the insurance company) at _____ to check the contractor's insurance coverage."

     (2) A notice concerning workers' compensation insurance. This notice may be provided as an attachment to the contract if the contract includes the statement: "A notice concerning workers' compensation insurance is attached to this contract." The notice shall include the heading "Workers' Compensation Insurance" followed by whichever of the following statements is correct:

     (A) "(The name on the license or 'This contractor') has no employees and is exempt from workers' compensation requirements."

     (B) "(The name on the license or 'This contractor') carries workers' compensation insurance for all employees."

     (3) A notice that provides the buyer with the following information about the performance of extra or change-order work:

     (A) A statement that the buyer may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of work covered by the new change order.

     (B) A statement informing the buyer that extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of work covered by the new change order:

     (i) The scope of work encompassed by the order.

     (ii) The amount to be added or subtracted from the contract.

     (iii) The effect the order will make in the progress payments or the completion date.

     (C) A statement informing the buyer that the contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment. . . .

     (4) A notice with the heading "Mechanics Lien Warning" written as follows:

     "MECHANICS LIEN WARNING:

     Anyone who helps improve your property, but who is not paid, may record what is called a mechanics lien on your property. A mechanics lien is a claim, like a mortgage or home equity loan, made against your property and recorded with the county recorder.

<div align="center">8</div>

ACCUSATION

1

2

3

       Even if you pay your contractor in full, unpaid subcontractors, suppliers, and laborers who helped to improve your property may record mechanics liens and sue you in court to foreclose the lien. If a court finds the lien is valid, you could be forced to pay twice or have a court officer sell your home to pay the lien. Liens can also affect your credit.

4

5

6

       To preserve their right to record a lien, each subcontractor and material supplier must provide you with a document called a 'Preliminary Notice.' This notice is not a lien. The purpose of the notice is to let you know that the person who sends you the notice has the right to record a lien on your property if he or she is not paid.

7

8

       BE CAREFUL. The Preliminary Notice can be sent up to 20 days after the subcontractor starts work or the supplier provides material. This can be a big problem if you pay your contractor before you have received the Preliminary Notices.

9

10

       You will not get Preliminary Notices from your prime contractor or from laborers who work on your project. The law assumes that you already know they are improving your property.

11

12

13

       PROTECT YOURSELF FROM LIENS. You can protect yourself from liens by getting a list from your contractor of all the subcontractors and material suppliers that work on your project. Find out from your contractor when these subcontractors started work and when these suppliers delivered goods or materials. Then wait 20 days, paying attention to the Preliminary Notices you receive.

14

15

       PAY WITH JOINT CHECKS. One way to protect yourself is to pay with a joint check. When your contractor tells you it is time to pay for the work of a subcontractor or supplier who has provided you with a Preliminary Notice, write a joint check payable to both the contractor and the subcontractor or material supplier.

16

17

       For other ways to prevent liens, visit CSLB's Internet Web site at www.cslb.ca.gov or call CSLB at 800-321-CSLB (2752).

18

19

       REMEMBER, IF YOU DO NOTHING, YOU RISK HAVING A LIEN PLACED ON YOUR HOME. This can mean that you may have to pay twice, or face the forced sale of your home to pay what you owe."

20

       (5) The following notice shall be provided in at least 12-point typeface:

21

       "Information about the Contractors' State License Board (CSLB): CSLB is the state consumer protection agency that licenses and regulates construction contractors.

22

23

24

       Contact CSLB for information about the licensed contractor you are considering, including information about disclosable complaints, disciplinary actions, and civil judgments that are reported to CSLB.

25

26

27

       Use only licensed contractors. If you file a complaint against a licensed contractor within the legal deadline (usually four years), CSLB has authority to investigate the complaint. If you use an unlicensed contractor, CSLB may not be able to help you resolve your complaint. Your only remedy may be in civil court, and you may be liable for damages arising out of any injuries to the unlicensed contractor or the unlicensed contractor's employees.

28

       For more information:

ACCUSATION

**Ex. 3, Page 9 of 28**

Visit CSLB's Internet Web site at www.cslb.ca.gov

Call CSLB at 800-321-CSLB (2752)

Write CSLB at P.O. Box 26000, Sacramento, CA 95826"

(6)(A) The notice set forth in subparagraph (B) and entitled "Three-Day Right to Cancel," shall be provided to the buyer unless the contract is:

(i) Negotiated at the contractor's place of business.

(ii) Subject to the "Seven-Day Right to Cancel," as set forth in paragraph (7).

(iii) Subject to licensure under the Alarm Company Act (Chapter 11.6 (commencing with Section 7590)), provided the alarm company licensee complies with Sections 1689.5, 1689.6, and 1689.7 of the Civil Code, as applicable.

(B) "Three-Day Right to Cancel

You, the buyer, have the right to cancel this contract within three business days. You may cancel by e-mailing, mailing, faxing, or delivering a written notice to the contractor at the contractor's place of business by midnight of the third business day after you received a signed and dated copy of the contract that includes this notice. Include your name, your address, and the date you received the signed copy of the contract and this notice.

If you cancel, the contractor must return to you anything you paid within 10 days of receiving the notice of cancellation. For your part, you must make available to the contractor at your residence, in substantially as good condition as you received them, goods delivered to you under this contract or sale. Or, you may, if you wish, comply with the contractor's instructions on how to return the goods at the contractor's expense and risk. If you do make the goods available to the contractor and the contractor does not pick them up within 20 days of the date of your notice of cancellation, you may keep them without any further obligation. If you fail to make the goods available to the contractor, or if you agree to return the goods to the contractor and fail to do so, then you remain liable for performance of all obligations under the contract."

20. Code section 7159.5 provides, in pertinent part:

This section applies to all home improvement contracts, as defined in Section 7151.2, between an owner or tenant and a contractor, whether a general contractor or a specialty contractor, who is licensed or subject to be licensed pursuant to this chapter with regard to the transaction.

(a) Failure by the licensee or a person subject to be licensed under this chapter, or by his or her agent or salesperson to comply with the following provisions is cause for discipline: . . .

(3) If a downpayment will be charged, the downpayment may not exceed one thousand dollars ($1,000) or 10 percent of the contract amount, whichever is less.

///

10

**Ex. 3, Page 10 of 28**

## COST RECOVERY AND RESTITUTION

21. Code section 125.3 provides, in pertinent part, that the Board may request the administrative law judge to direct a licentiate found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case, with failure of the licentiate to comply subjecting the license to not being renewed or reinstated. If a case settles, recovery of investigation and enforcement costs may be included in a stipulated settlement.

22. Government Code section 11519, subdivision (d), provides, in pertinent part, that the Registrar may require restitution of damages suffered as a condition of probation in the event probation is ordered.

### L.D. PROJECT

23. On or about March 3, 2014, Respondent, doing business as Granite Depot, entered into a home improvement contract with "L.D." to repair and remodel L.D.'s kitchen and a bathroom at L.D.'s residence on Hanover Avenue in Lemoore, California (the "L.D. project") for $21,614 total. On or about March 4, 2014, Respondent accepted a down payment in the amount of $10,000.

24. On or about March 8, 2014, Respondent began work on the L.D. project.

25. On or about June 25, 2014, Respondent last performed work on the L.D. L.D. paid Respondent a total of $12,300.

26. On or about February 4, 2015, an industry expert retained by the Board inspected the L.D. project. On or about March 6, 2015, the industry expert found that work performed by Respondent on the L.D. project did not meet accepted trade standards for good and workmanlike construction. The industry expert estimated that it would cost approximately $20,800 to correct and complete the work.

///
///
///
///

ACCUSATION

**Ex. 3, Page 11 of 28**

## FIRST CAUSE FOR DISCIPLINE

### (Poor Workmanship)

27.   Respondent is subject to discipline under Code section 7109, subdivision (a), in that on the L.D. project, Respondent willfully departed from accepted trade standards for good and workmanlike construction in certain material respects including, but not limited to, the following:

  a.   Respondent failed to properly install the electrical wiring.

  b.   Respondent failed to seal and finish the interior and exterior of the cabinetry, and cabinetry appliance cut-outs.

  c.   Respondent failed to install toe kicks, or ascents, for all of the base cabinets.

  d.   Respondent failed to properly install plumbing for the kitchen sink.

  e.   Respondent failed to install matching floor tile.

  f.   Respondent failed to install the floor tiles flush and/or level.

  g.   Respondent failed to properly seal and grout the floor tile.

  h.   Respondent failed to install the floor tile in a manner that properly transitioned from floor tile to carpet.

  i.   Respondent failed to properly install and finish the baseboards.

### SECOND CAUSE FOR DISCIPLINE

### (Failure To Complete The Contract For The Stated Contract Price)

28.   Respondent is subject to discipline under Code section 7113, in that on the L.D. project, Respondent failed in a material respect to complete the project for the price stated in the contract, which will require L.D. to spend substantial sums over the total contract price to complete the project.

### THIRD CAUSE FOR DISCIPLINE

### (Responsible Managing Officer's Failure To Supervise)

29.   Respondents are subject to discipline under Code section 7115, as defined in Code section 7068.1, in that on the L.D. project, Respondent failed to exercise direct supervision and control of the construction operations.

12

ACCUSATION

1
2
3

<center>**FOURTH CAUSE FOR DISCIPLINE**</center>

<center>**(Contracting Out Of Classification)**</center>

30.    Respondent is subject to discipline under Code section 7117.6, in that she contracted to perform work in classifications other than her C-54 (tile and mosaic) license classification. Specifically, on the L.D. project, Respondent contracted for work requiring a B Classification (general building contractor).

<center>**FIFTH CAUSE FOR DISCIPLINE**</center>

<center>**(Violation Of Building Laws)**</center>

31.    Respondent is subject to discipline under Code section 7110, in that Respondent willfully or deliberately disregarded and violated the California Building Code, adopted by the City of Lemoore by Ordinance No. 2008-02, by failing to obtain building permits prior to beginning work on the L.D. project.

<center>**SIXTH CAUSE FOR DISCIPLINE**</center>

<center>**(Contract Violations)**</center>

32.    Respondent is subject to discipline under Code section 7159, subdivision (a)(5), in that on the L.D. project, Respondent failed to comply with numerous provisions of Code section 7159, as follows:

a.    **Code section 7159, subdivision (c)(3)(B)(ii)**: Respondent failed to include on the contract a statement advising the buyer that the Notice of Cancellation may be sent to the contractor and failed to provide the name and address to which the Notice of Cancellation was to be mailed.

b.    **Code section 7159, subdivision (c)(4)**: Respondent failed to include on the contract the mechanic's lien warning.

c.    **Code section 7159, subdivision (c)(5)**: Respondent failed to include on the contract the heading, "Contract Price", followed by the amount of the contract.

d.    **Code section 7159, subdivision (c)(6)**: Respondent failed to include on the contract the notice stating that the owner or tenant has the right to require the contractor to have a performance and payment bond.

<center>13</center>

<center>**Ex. 3, Page 13 of 28**</center>

1      e.    **Code section 7159, subdivision (c)(8)(A),(B) and (C)**: Respondent failed to include

2    on the contract as specified, details of the down payment.

3      f.    **Code section 7159, subdivision (c)(7)**: Respondent failed to include on the contract

4    the heading, "Description of the Project and Description of the Significant Materials to be Used

5    and Equipment to be Installed".

6      g.    **Code section 7159, subdivision (d)(3)**: Respondent failed to include the heading

7    "Home Improvement" on the contract.

8      h.    **Code section 7159, subdivision (d)(8)(A)**: Respondent failed to include the heading

9    "Down Payment" on the contract.

10      i.    **Code section 7159, subdivision (d)(8)(B)**: Respondent failed to include space for the

11    actual down payment on the contract.

12      j.    **Code section 7159, subdivision (d)(8)(C)**: Respondent failed to include the

13    statement that the down payment may not exceed $1,000 or 10 percent of the contract price,

14    whichever is less, on the contract.

15      k.    **Code section 7159, subdivision (d)(9)(A)(B)(C)**: Respondent failed to include on

16    the contract the heading "Schedule of Progress Payments", followed by a schedule of progress

17    payments and a statement that it is unlawful for a contractor to collect payment for work not yet

18    completed or materials not yet delivered.

19      l.    **Code section 7159, subdivision (d)(10)(A)**: Respondent failed to include on the

20    contract a statement that describes what constitutes substantial commencement of work under the

21    contract.

22      l.    **Code section 7159, subdivision (d)(10)(B)**: Respondent failed to include on the

23    contract the heading, "Approximate Start Date."

24      m.    **Code section 7159, subdivision (d)(10)(C)**: Respondent failed to include on the

25    contract the approximate date on which work was to commence.

26      n.    **Code section 7159, subdivision (d)(11)(A)(B)**: Respondent failed to include on the

27    contract the estimated completion date of the work referenced in the contract.

28

ACCUSATION

**Ex. 3, Page 14 of 28**

o.  **Code section 7159, subdivision (d)(13)**: Respondent failed to include on the contract the statement that extra work and change orders become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order, and that the order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments.

p.  **Code section 7159, subdivision (e)(1)**: Respondent failed to include on the contract the notice concerning general liability insurance.

q.  **Code section 7159, subdivision (e)(2)**: Respondent failed to include on the contract a notice concerning workers' compensation insurance.

r.  **Code section 7159, subdivision (e)(3)**: Respondent failed to include on the contract the notice that provides the buyer with information about the performance of extra or change-order work.

s.  **Code section 7159, subdivision (e)(4)**: Respondent failed to include on the contract the notice regarding a Mechanic's Lien or the language required therefor.

t.  **Code section 7159, subdivision (e)(5)**: Respondent failed to include on the contract the notice regarding the Contractors' State License Board.

u.  **Code section 7159, subdivision (e)(6)(A)**: Respondent failed to provide on the contract the notice regarding the owner's three-day right to cancel the contract.

### SEVENTH CAUSE FOR DISCIPLINE

#### (Excessive Down Payment)

33.  Respondent is subject to discipline under Code section 7159.5(a)(3), in that on the L.D. project, Respondent demanded and received a down payment in the amount of $10,000, an amount in excess of that allowed by law.

### OTHER MATTERS

34.  Pursuant to Code sections 7097 and 7098, if Contractor's License Number 976364, issued to Christina Marie Ruelas Gonzalez, as owner of Granite Depot, is suspended or revoked, then the Registrar may suspend or revoke, without notice, any other license issued in the name of

15

ACCUSATION

**Ex. 3, Page 15 of 28**

1   Christina Marie Ruelas Gonzalez, including, but not limited to, Contractor's License Number

2   877849, issued to Christina Marie Ruelas Gonzalez, as owner of RGS Tile, and any other license

3   for which she furnished the qualifying experience and appearance.

4       35.   Pursuant to Code section 7121, if discipline is imposed on Contractor's License

5   Number 976364, issued to Christina Marie Ruelas Gonzalez, as owner of Granite Depot, then

6   Christina Marie Ruelas Gonzalez shall be prohibited from serving as an officer, director,

7   associate, partner, manager, or qualifying individual, or member of the personnel of record of a

8   licensee of any licensee during the time the discipline is imposed, and any licensee which

9   employs, elects, or associates her in any capacity other than as a non-supervising bona fide

10   employee shall be subject to disciplinary action.

11       36.   Pursuant to Code section 7122.5, the causes for discipline established as to Granite

12   Depot constitute causes for discipline against Contractor's License Number 877849, issued to

13   Christina Marie Ruelas Gonzalez, as owner of RGS Tile, and any other license issued to Christina

14   Marie Ruelas Gonzalez regardless of whether she had knowledge of or participated in the acts or

15   omissions alleged above which constitute cause for discipline against Christina Marie Ruelas

16   Gonzalez, as owner of Granite Depot.

17                            **PRAYER**

18      **WHEREFORE,** Complainant requests that a hearing be held on the matters herein alleged,

19   and that following the hearing, the Registrar of Contractors issue a decision:

20       1.   Revoking or suspending Contractor's License Number 976364 issued to Christina

21   Marie Ruelas Gonzalez, as owner of Granite Depot;

22       2.   Revoking or suspending Contractor's License Number 877849 issued to Christina

23   Marie Ruelas Gonzalez, as owner of RGS Tile;

24       3.   Prohibiting Christina Marie Ruelas Gonzalez from serving as an officer, director,

25   associate, partner, or qualifying individual of any licensee during the period that discipline is

26   imposed on license Number 976364, issued to Christina Marie Ruelas Gonzalez, as owner of

27   Granite Depot;

28

ACCUSATION

**Ex. 3, Page 16 of 28**

1　　　　4.　　Revoking or suspending any other license for which Christina Marie Ruelas Gonzalez

2　　is furnishing the qualifying experience or appearance;

3　　　　5.　　Ordering restitution of all damages according to proof suffered by L.D. as a condition

4　　of probation in the event probation is ordered;

5　　　　6.　　Ordering restitution of all damages suffered by L.D. as a result of the conduct as a

6　　contractor by Christina Marie Ruelas Gonzalez, as owner of Granite Depot, as a condition of

7　　restoration of Contractor's License Number 976364, issued to Christina Marie Ruelas Gonzalez,

8　　as owner of Granite Depot;

9　　　　7.　　Ordering Christina Marie Ruelas Gonzalez to pay the Registrar of Contractors her

10　　costs in the investigation and enforcement of the case according to proof at the hearing, pursuant

11　　to Business and Professions Code section 125.3;

12　　　　8.　　Ordering Christina Marie Ruelas Gonzalez to provide the Registrar with a listing of

13　　all contracting projects in progress and the anticipated completion date of each; and,

14　　　　9.　　Taking such other and further action as deemed necessary and proper.

15

16　　DATED: _March 10, 2016_　　　　　_____ for

17　　　　　　　　**FILED**　　　　　WOOD ROBINSON
　　　　　　　　　　　　　　　　　Enforcement Supervisor I
18　　　　　　　　MAR 10 2016　　Contractors' State License Board
　　　　　　　　　　　　　　　　　Department of Consumer Affairs
19　　　　　　　**CSLB DSS**　　State of California
　　　　　　　　　　　　　　　　　*Complainant*
20
　　SA2015104780
21　　12151007.doc

22

23

24

25

26

27

28

　　　　　　　　　　　　　　　　　　　　　　　　　　　　ACCUSATION

**Ex. 3, Page 17 of 28**

1   KAMALA D. HARRIS
    Attorney General of California
2   KENT D. HARRIS
    Supervising Deputy Attorney General
3   JOSHUA B. EISENBERG
    Deputy Attorney General
4   State Bar No. 279323
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA  94244-2550
6     Telephone:  (916) 327-1466
      Facsimile:  (916) 327-8643
7     E-mail: Joshua.Eisenberg@doj.ca.gov
    *Attorneys for Complainant*
8
                              BEFORE THE
9                   REGISTRAR OF CONTRACTORS
                 CONTRACTORS' STATE LICENSE BOARD
10               DEPARTMENT OF CONSUMER AFFAIRS
                       STATE OF CALIFORNIA
11

12  In the Matter of the Accusation Against:     Case No. N2014-449

13  **GRANITE DEPOT**
    P.O. Box 1411
14  Fresno, California 93716                     **STIPULATED SETTLEMENT AND**
    **CHRISTINA MARIE RUELAS**                   **DISCIPLINARY ORDER**
15  **GONZALEZ, OWNER**

16  **Contractor's License No. 976364**

17  **RGS TILE**
    P.O. Box 1411
18  Fresno, California 93716
    **CHRISTINA MARIE RUELAS**
19  **GONZALEZ, OWNER**

20  **Contractor's License No. 877849**

21            Respondent and Affiliated Parties.

22

23
         IT IS HEREBY STIPULATED AND AGREED by and between the parties to the above-
24
    entitled proceedings that the following matters are true:
25
                                  PARTIES
26
         1.     Wood Robinson ("Complainant") is the Enforcement Supervisor I of the Contractors
27
    State License Board - Sacramento.  He brought this action solely in his official capacity and is
28

                                         1

                               STIPULATED SETTLEMENT (N2014-449)

1  represented in this matter by Kamala D. Harris, Attorney General of the State of California, by

2  Joshua B. Eisenberg, Deputy Attorney General.

3      2.    Respondent Granite Depot; Christina Marie Ruelas Gonzalez, Owner ("Respondent")

4  is representing herself in this proceeding and has chosen not to exercise her right to be

5  represented by counsel.

6      3.    On or about September 6, 2012, the Registrar of Contractors ("Registrar") issued

7  Contractor's License Number 976364, classification C-54 (ceramic & mosaic), to Christina Marie

8  Ruelas Gonzalez ("Respondent"), as owner of Granite Depot. On or about July 11, 2014, the

9  contractor's license was suspended pursuant to Business and Professions Code ("Code") section

10 7125.2 (failure to maintain workers' compensation insurance). On or about July 12, 2014, the

11 contractor's license was suspended pursuant to Code of Civil Procedure section 996.340 (no

12 contractor's bond). On or about September 30, 2014, the license expired under suspension, and

13 has not been renewed.

14     4.    On or about September 1, 2012, the Registrar issued Contractor's License Number

15 877849, classification C-54 (ceramic & mosaic), to Respondent, as owner of RGS Tile. The

16 license expired on May 31, 2016. The license was previously suspended, as follows.

17

| Suspension Date | Violation | Status |
|---|---|---|
| 09/02/2012 | Code of Civil Procedure section 996.340 (no contractor's bond) | Reinstated 09/07/12 |
| 07/23/2013 | Code section 7125.2 (failure to maintain workers' compensation insurance) | 12/18/2013, suspension lifted and reinstated 01/23/2014. |
| 01/16/2015 | Code of Civil Procedure section 996.340 (no contractor's bond) | Reinstated 04/07/15 |
| 10/09/2013 | Code of Civil Procedure section 996.340 (no contractor's bond) | 12/18/2013, suspension lifted and reinstated 01/23/2014. |

25                             JURISDICTION

26     5.    Accusation No. N2014-449 was filed before the Registrar of Contractors for the

27 Contractors' State License Board, and is currently pending against Respondent. The Accusation

28

2

**Ex. 3, Page 19 of 28**

1  and all other statutorily required documents were properly served on Respondent on March 10,

2  2016. Respondent timely filed her Notice of Defense contesting the Accusation.

3       6.    A copy of Accusation No. N2014-449 is attached as exhibit A and incorporated

4  herein by reference.

5  <center>ADVISEMENT AND WAIVERS</center>

6       7.    Respondent has carefully read, and understands the charges and allegations in

7  Accusation No. N2014-449. Respondent has also carefully read, and understands the effects of

8  this Stipulated Settlement and Disciplinary Order.

9       8.    Respondent is fully aware of her legal rights in this matter, including the right to a

10  hearing on the charges and allegations in the Accusation; the right to be represented by counsel at

11  her own expense; the right to confront and cross-examine the witnesses against her; the right to

12  present evidence and to testify on her own behalf; the right to the issuance of subpoenas to

13  compel the attendance of witnesses and the production of documents; the right to reconsideration

14  and court review of an adverse decision; and all other rights accorded by the California

15  Administrative Procedure Act and other applicable laws.

16       9.    Respondent voluntarily, knowingly, and intelligently waives and gives up each and

17  every right set forth above.

18  <center>CULPABILITY</center>

19       10.   Respondent understands and agrees that the charges and allegations in Accusation

20  No. N2014-449, if proven at a hearing, constitute cause for imposing discipline upon her

21  Contractor's licenses.

22       11.   For the purpose of resolving the Accusation without the expense and uncertainty of

23  further proceedings, Respondent agrees that, at a hearing, Complainant could establish a factual

24  basis for the charges in the Accusation, and that Respondent hereby gives up her right to contest

25  those charges.

26       12.   Respondent agrees that her Contractor's Licenses are subject to discipline and she

27  agrees to be bound by the Contractors' State License Board probationary terms as set forth in the

28  Disciplinary Order below.

<center>3</center>

<div align="right">STIPULATED SETTLEMENT (N2014-449)</div>

<center>**Ex. 3, Page 20 of 28**</center>

<u>CONTINGENCY</u>

13.    This stipulation shall be subject to approval by the Registrar or the Registrar's designee.  Respondent understands and agrees that counsel for Complainant and the staff of the Contractors' State License Board may communicate directly with the Registrar regarding this stipulation and settlement, without notice to or participation by Respondent or his counsel.  By signing the stipulation, Respondent understands and agrees that she may not withdraw her agreement or seek to rescind the stipulation prior to the time the Registrar considers and acts upon it.  If the Registrar fails to adopt this stipulation as its Decision and Order, the Stipulated Settlement and Disciplinary Order shall be of no force or effect, except for this paragraph, it shall be inadmissible in any legal action between the parties, and the Registrar shall not be disqualified from further action by having considered this matter.

14.    The parties understand and agree that Portable Document Format (PDF) and facsimile copies of this Stipulated Settlement and Disciplinary Order, including PDF and facsimile signatures thereto, shall have the same force and effect as the originals.

15.    This Stipulated Settlement and Disciplinary Order is intended by the parties to be an integrated writing representing the complete, final, and exclusive embodiment of their agreement. It supersedes any and all prior or contemporaneous agreements, understandings, discussions, negotiations, and commitments (written or oral).  This Stipulated Settlement and Disciplinary Order may not be altered, amended, modified, supplemented, or otherwise changed except by a writing executed by an authorized representative of each of the parties.

16.    In consideration of the foregoing admissions and stipulations, the parties agree that the Contractors' State License Board may, without further notice or formal proceeding, issue and enter the following Disciplinary Order:

<u>**DISCIPLINARY ORDER**</u>

IT IS HEREBY ORDERED that Contractor's License No. 976364 issued to Respondent Granite Depot; Christina Marie Ruelas Gonzalez, Owner (Respondent) is revoked and that Contractor's License No. 877849 issued to Respondent RGS Tile; Christina Marie Ruelas

4

1   Gonzalez, Owner (Respondent) is revoked. However, both revocations are stayed and

2   Respondent is placed on probation for three (3) years on the following terms and conditions.

3       1.    **Obey All Laws.** Respondent shall comply with all federal, state and local laws,

4   including all building laws and uniform codes, governing the activities of a licensed contractor in

5   California.

6       2.    **Interviews With Enforcement Representative.** Respondent and any of

7   Respondent's personnel of record shall appear in person for interview with the Registrar or

8   designee upon request and reasonable notice during the probationary period.

9       3.    **Completion Of Probation.** Upon successful completion of probation, the

10  Contractor's License No. 976364 and Contractor's License No. 877849 will be fully restored.

11      4.    **Violation Of Probation.** If Respondent violates probation or any condition of

12  probation in any respect, the Registrar, after giving notice and opportunity to be heard, may

13  revoke probation and impose the disciplinary order that is stayed. If an accusation or petition to

14  revoke probation is filed against Respondent during the probationary period, then the Registrar

15  shall have continuing jurisdiction of this matter until the subsequent matter is final, and the period

16  of probation and all the conditions of probation in this matter shall be extended until the

17  subsequent matter is final. If there is an order to make restitution or pay cost recovery and

18  Respondent fails to comply with the restitution or cost recovery order and make a payment, the

19  Registrar may immediately lift the stay and reimpose the disciplinary order without giving

20  Respondent an opportunity to be heard.

21      5.    **Production of Documents.** Respondent shall submit copies of documents directly

22  related to the person's construction operations to the Registrar upon demand during the probation

23  period.

24      6.    **Restitution.** Respondent agrees to pay the sum of $11,486.00 to Lisa Donahue as

25  restitution in this matter. Respondent agrees to pay an initial payment of $382.87 within 30 days

26  of the effective date of the Decision and Order. Respondent agrees to make monthly payments of

27  $382.87 on the 15th of each month thereafter for 29 months or until $11,486.00 is paid in full.

28  Respondent shall directly submit this initial payment and all subsequent monthly payments to

<div align="center">5</div>

<div align="center">**Ex. 3, Page 22 of 28**</div>

1  Lisa Donahue at 956 Hanover Ave., Lemoore, CA 93245, and shall file proof of each payment

2  with the Registrar or designee enforcement representative, Probation Monitor at 9821 Business

3  Park Drive, Sacramento, CA 95827. Failure to submit proof to the Registrar or designee of each

4  payment of restitution to the victim shall automatically terminate the stay of the order of

5  revocation and Respondent's license shall be revoked effective thirty (30) days from the due date

6  of the delinquent payment without further notice or hearing.

7        **7.**   **Construction Contracts.** Respondent shall submit copies of all construction

8  contracts to the Registrar or designee for approval upon demand during the probationary period.

9        **8.**   **Disciplinary Bond.** Not later than the effective date of the decision, Respondent

10  shall file or have on file a disciplinary contractor's bond in a sum to be fixed by the registrar

11  based upon the seriousness of the violation, but which sum shall not be less than fifteen thousand

12  dollars ($15,000) nor more than 10 times that amount required by Business and Professions Code

13  section 7071.6. The disciplinary bond is in addition to, may not be combined with, and does not

14  replace any other type of contractor's bond. The disciplinary bond shall remain on file with the

15  registrar for a period of at least two years and for such additional time as the registrar may

16  determine, as required by Business and Professions Code section 7071.8.

17        **9.**   **Respond to Inquiry from Probation Monitor.** Respondent shall respond in writing

18  within 20 calendar days of any written inquiry or demand from the Registrar or authorized

19  designee (Probation Monitor) during the probation period. Failure to respond within the allotted

20  timeframe shall be considered a violation of the terms of probation.

21        **10.**   **Law and Business Examination.** Respondent shall take and pass within ninety (90)

22  days of the effective date of the Decision and Order the Contractors' State License Board's law

23  and business examination. Respondent has the burden of applying for, scheduling, and making

24  arrangements to take the exam.

25  ///

26  ///

27  ///

28  ///

6

STIPULATED SETTLEMENT (N2014-449)

**Ex. 3, Page 23 of 28**

1    11.  **Cost Recovery.**  Respondent shall pay to the Registrar pursuant to Business and

2   Professions Code section 125.3 the costs of investigation and enforcement in this matter in the

3   amount $5,676.40 within one year of the effective date of the Decision and Order.  Payments may

4   be made in equal monthly installments beginning thirty (30) days from  the effective date of the

5   Decision and Order.

6                                           ACCEPTANCE

7        I have carefully read the Stipulated Settlement and Disciplinary Order.  I understand the

8   stipulation and the effect it will have on my Contractor's License.   I enter into this Stipulated

9   Settlement and Disciplinary Order voluntarily, knowingly, and intelligently, and agree to be

10  bound by the Decision and Order of the Contractors' State License Board.

11

12  DATED:

13                                          GRANITE DEPOT; CHRISTINA MARIE RUELAS
                                            GONZALEZ, OWNER
14                                          Respondent

15  DATED:

16                                          RGS TILE; CHRISTINA MARIE RUELAS
                                            GONZALEZ, OWNER
17                                          Respondent

18                                          ENDORSEMENT

19       The foregoing Stipulated Settlement and Disciplinary Order is hereby respectfully

20  submitted for consideration by the Contractors' State License Board.

21  Dated: 9/21/2016                        Respectfully submitted,

22                                          KAMALA D. HARRIS
                                            Attorney General of California
23                                          KENT D. HARRIS
                                            Supervising Deputy Attorney General
24

25

26                                          JOSHUA B. EISENBERG
                                            Deputy Attorney General
27                                          *Attorneys for Complainant*

28  SA2015104780
    Stipulated Settlement and Disciplinary Order (Granite Depot).docx

                                            7

                                            STIPULATED SETTLEMENT (N2014-449)

**Ex. 3, Page 24 of 28**

**BEFORE THE**
**REGISTRAR OF CONTRACTORS**
**CONTRACTORS STATE LICENSE BOARD**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

In the Matter of the Accusation Against:

**GRANITE DEPOT**
**CHRISTINA MARIE RUELAS**
**GONZALEZ, OWNER**
P.O. Box 1411
Fresno, California 93716

**Contractor's License No. 976364**

**RGS TILE**
**CHRISTINA MARIE RUELAS**
**GONZALEZ, OWNER**
P.O. Box 1411
Fresno, California 93716

**Contractor's License No. 877849**

                                                Respondent.

CASE NO. N2014-449
N2016-374

DEFAULT DECISION

AND ORDER

[Gov. Code, § 11520]

## FINDINGS OF FACT

1.     On or about September 19, 2017, Accusation and Petition to Revoke Probation, Case No. N2014-449 and N2016-374, was filed against **GRANITE DEPOT** before the Contractors State License Board (Board). (Accusation and Petition to Revoke Probation Case No. N2014-449 and N2016-374, is attached as Exhibit A).

2.     On or about September 6, 2012, the Board issued Contractor's License No. **976364** to **GRANITE DEPOT**. The Contractor's License expired on September 30, 2014, and has not been renewed. This lapse in licensure however, pursuant to Business and Professions Code section 118(b), does not deprive the Board of its authority to institute or continue this disciplinary proceeding.

3.     On or about September 19, 2017, Respondent was served by Certified and First Class Mail copies of the Accusation and Petition to Revoke Probation, Case No. N2014-449 and N2016-374, Statement to Respondent, Notice of Defense, Request for Discovery, and Discovery Statutes (Government Code sections 11507.5, 11507.6, and 11507.7) at Respondent's address of record on file with the Board. Respondent's address of record was and is: P.O. Box 1411. Fresno, California 93716.

Page 1

**Ex. 3, Page 25 of 28**

4.      Service of Accusation and Petition to Revoke Probation, Case No. N2014-449 and N2016-374, was effective as a matter of law under the provisions of Government Code section 11505, subdivision (c) and/or Business and Professions Code section 124.

5.      Government Code section 11506 states, in pertinent part:

"(c) The respondent shall be entitled to a hearing on the merits if the respondent files a notice of defense, and the notice shall be deemed a specific denial of all parts of the accusation not expressly admitted.  Failure to file a notice of defense shall constitute a waiver of respondent's right to a hearing, but the agency in its discretion may nevertheless grant a hearing."

6.      Government Code section 11520, subdivision (a), states, in pertinent part:

"If the respondent either fails to file a notice of defense or to appear at the hearing, the agency may take action based upon the respondent's express admissions or upon other evidence and affidavits may be used as evidence without any notice to respondent."

7.      Respondent, **GRANITE DEPOT**, having been served with Accusation and Petition to Revoke Probation, Case No. N2014-449 and N2016-374; having failed to file a Notice of Defense, pursuant to its authority under Government Code section 11520, the Registrar finds Respondent is in default.  The Registrar will take action without further hearing and, based on the relevant evidence contained in the Default Decision Evidence Packet in this matter, as well as taking official notice of all the investigatory reports, exhibits and statements contained therein on file at the Registrar's offices regarding the allegations contained in Accusation and Petition to Revoke Probation No. N2014-449 and N2016-374, finds that the charges and allegations in Accusation No. N2014-449 and N2016-374, are separately and severally, found to be true and correct by clear and convincing evidence.

8.      Taking official notice of its own internal records, it is hereby determined that the actual costs for investigation and enforcement in this matter are $14,395.56 as of October 12, 2017.

9.      It is hereby determined that the loss to Lisa Donahue caused by the acts or omissions of Respondent set forth herein is $11,486.00.

## Ex. 3, Page 26 of 28

## DETERMINATION OF ISSUES

1.      Based on the foregoing findings of fact, Respondent **GRANITE DEPOT** has subjected its Contractor's License No. **976364** to discipline.

2.      The agency has jurisdiction to adjudicate this case by default.

3.      The Registrar is authorized to revoke Respondent's Contractor's License based upon the following violations alleged in the Accusation which are supported by the evidence contained in the Default Decision Evidence Packet in this case:

a.      Business and Professions Code sections 7112, and 7114.

4.      Pursuant to Business and Professions Code section 7122.5, the performance by an individual, partnership, corporation, limited liability company, firm, or association of an act or omission constituting a cause for disciplinary action, constitutes a cause for disciplinary action against a licensee who at the time that the act or omission occurred was the qualifying individual of that individual, partnership, corporation, limited liability company, firm, or association, whether or not he or she had knowledge of or participated in the prohibited act or omission. Therefore, pursuant to this section, **CHRISTINA MARIE RUELAS GONZALEZ, OWNER**, is subject to discipline regardless of whether or not he had knowledge of or participated in the act(s) or omission(s) alleged in Accusation and Petition to Revoke Probation No. **N2014-449** and **N2015-397**.

<u>ORDER</u>

IT IS SO ORDERED THAT:

Contractor's License Number **976364** issued to **GRANITE DEPOT** is revoked.

IT IS FURTHER ORDERED that pursuant to Section 7102 of the Business and Professions Code and Section 870 of the Code of Regulations, title 16, Respondent **GRANITE DEPOT** Contractor's License No. **976364**, shall not apply for reissuance or reinstatement of said license for <u>five</u> year(s) from the effective date of this Decision.

Contractor's License No. **877849** issued to **RGS TILE** is revoked.

IT IS FURTHER ORDERED that pursuant to section 7102 of the Business and Professions Code and section 870 of the Code of Regulations, Respondent **RGS TILE**, Contractor's License No. **877849**, shall not apply for reissuance or reinstatement of said license for <u>five</u> year(s) from the effective date of this Decision.

IT IS FURTHER ORDERED that Respondent shall comply with all the laws, regulations and procedures for reinstatement of a revoked license in effect at the time the petition is filed pursuant to Business and Profession Code section 7102, including but not limited to, pay restitution to Lisa Donahue in the amount of $14,395.56.

Pursuant to Government Code section 11520, subdivision (c), Respondent may serve a written motion requesting that the Decision be vacated and stating the grounds relied on within seven (7) days after service of the Decision on Respondent. The agency in its discretion may vacate the Decision and grant a hearing on a showing of good cause, as defined in the statute.

This Decision shall become effective on <u>December 13, 2017.</u>

IT IS SO ORDERED <u>November 13, 2017.</u>

_____
David Fogt
Registrar of Contractors

**Ex. 3, Page 28 of 28**

FW: Accusation #N2014-449 - Immediate action needed      mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

**Subject:** FW: Accusation #N2014-449 - Immediate action needed
**From:** "Fogt, David@CSLB" <David.Fogt@cslb.ca.gov>
**Date:** 5/7/2024, 2:51 PM
**To:** "gregg@legalsupport-sc.com" <gregg@legalsupport-sc.com>
**CC:** "Enforcement@CSLB" <Enforcement@CSLB.ca.gov>

Thank you, Mr. Roberts, for your email and offer.

CSLB is not interested in any assignment and has established collection methods in place.

David Fogt

**David Fogt, Registrar**
Contractors State License Board
9821 Business Park Drive, Sacramento, CA 95827
**Office:** (916) 255-4000
**Cell:** (916) 501-0580
Email:David.Fogt@cslb.ca.gov

**From:** Gregg Roberts <gregg@legalsupport-sc.com>
**Sent:** Tuesday, May 7, 2024 12:10 PM
**To:** Enforcement@CSLB <Enforcement@CSLB.ca.gov>
**Cc:** Lisa Barlow <lisas0928@gmail.com>; Fogt, David@CSLB <David.Fogt@cslb.ca.gov>
**Subject:** Re: Accusation #N2014-449 - Immediate action needed

> CAUTION: This email originated from outside of CSLB. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello,

I just found this enforcement@cslb.ca.gov email address, which might be a more appropriate address for this urgent matter. Please let me know.

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Ex. 4, Page 1 of 3**

On 5/3/2024 8:23 AM, Gregg Roberts wrote:

Mr. Vogt,

Your agency negotiated a stipulated settlement in the above-entitled case. The former licensee, Christina Marie Ruelas Gonzalez, defaulted on the settlement. You then signed an order increasing the restitution amount due to the victimized consumer Lisa Barlow, formerly known as Lisa Donahue. She has assigned to me all her legal rights in her restitution award. See the JPEG images attached.

I am writing you to see if the CSLB would like to assign all *its* legal rights in the cost recovery in this case. See p. 7 of the Stipulated Settlement and p. 2 of the Default Decision and Order, both attached. I assume that interest accrues on all CSLB awards, but I have not yet been able to find confirmation or the rate.

I intend to file an adversary proceeding to get the debt to Ms. Barlow declared nondischargeable and get a money judgment. There's a very short fuse to get this done. The statute would have expired several years ago, but Ms. Barlow acquired actual knowledge of the bankruptcy case and discharge only six weeks ago.

It would make sense to bring an action based on your agency's claim at the same time. If it isn't done at the same time, it can probably never be done because Ms. Barlow informed your agency about the bankruptcy discharge about a month ago.

I am not an attorney. I have been enforcing judgments in California for about 10 years. I have brought several nondischargeability actions that led to settlements. An action over $3 million arising from a triple murder is currently pending.

Terms of the distribution of net recovery, a typical industry rate is 50%. However, because of the extra difficulty of bringing a bankruptcy action before the normal routine of enforcement of a judgment, in this case I will retain 60% of any net recovery and distribute 40% to Ms. Barlow. I will front all expenses, but they come off the top of any gross recovery before any distribution to creditors. I hereby offer your agency the same general terms. I will provide you with a detailed purchase agreement if you are interested.

It seems unlikely that your agency would expend the effort to bring its own nondischargeability action in this case. This offer most likely represents free money for the agency.

Please let me know by the close of business this coming Tuesday, May 7, whether the agency will accept my offer. I will then draw up the papers for you or your designated employee to execute. Be aware that Code of Civil Procedure 673 requires that, if an agent of the judgment creditor executes an assignment, documentation sufficient to evidence the authority of the signing agent must be included with the assignment document. Principals in an organization are not agents of the organization but non-principal managers presumably are.

## Ex. 4, Page 2 of 3

FW: Accusation #N2014-449 - Immediate action needed    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Ex. 4, Page 3 of 3**